**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Revolution Distribution, an Arizona limited liability company,<br><br>            Plaintiff,<br><br>vs.<br><br>Evol Nutrition Associates, Inc., a Georgia corporation; Jeremy Nickels, an individual; Jessica Nickels, an individual,<br><br>            Defendants. | No. CV 11-2120-PHX-JAT<br><br>**ORDER** |

Pending before the Court are Defendant Evol Nutrition Associates, Inc.'s Motion to Dismiss the Complaint, or, in the Alternative, to Transfer Venue (Doc. 12) and Defendants Jeremy and Jessica Nickels' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Doc. 19). The Court now rules on the motions.

**I.     BACKGROUND**

Plaintiff Revolution Distribution ("Revolution") brought this action against Defendants Evol Nutrition Associates, Inc. ("Evol") and Jeremy and Jessica Nickels, seeking declaratory judgment regarding the parties' rights to use their similar trademarks and also asserting trademark infringement and unfair competition claims against Defendants.

Revolution is an Arizona limited liability company. According to the Complaint, Revolution is involved in the invention, sale and marketing of various "unique novelty

1 products," including clothing and accessories and also "specialty herbal aroma therapy
2 products and supplements." Doc. 1 at ¶ 6.  Revolution created the "Zan E. Bar" trademark
3 on or about January 25, 2011 and has used it in interstate commerce since March 2011.[1]  *Id.*
4 at ¶¶ 7-8.  Beginning on May 15, 2011, Revolution advertised its "Zan E. Bar" product at the
5 Atlantic City Champs trade show.  *Id.* at ¶ 9.  There is no indication that Revolution
6 attempted to register the trademark.

7 Evol is a Georgia corporation.  Doc. 13 at ¶ 3.  Jeremy and Jessica Nickels, a married
8 couple residing in Georgia, are Evol's CEO and CFO, respectively.  *Id.* at ¶¶ 2-4.  According
9 to Jeremy Nickels, "Evol is engaged in the business of inventing and distributing herbal and
10 nutritional products, and is a leader in the novelty, herbal and nutritional products industries."
11 *Id.* at ¶ 5.

12 Jeremy and Jessica Nickels created the "Zaney Bar" trademark, naming it after their
13 son.  Doc. 13 at ¶ 12.  On August 23, 2011, a trademark application for the "Zaney Bar"
14 trademark, for use with goods in the "herbal supplements" class, was filed with the United
15 States Patent and Trademark Office.  Doc. 1 at ¶ 11; Doc. 1-3, Ex. 5.  Jeremy and Jessica
16 Nickels are listed as co-applicants on the application.  Doc. 1-3, Ex. 5.  The application
17 alleges a first use date of May 12, 2011.  *Id.*

18 Further, Evol operates two websites: http://www.evolnutrition.com ("Evol Nutrition
19 site") and http://www.reddawnparty.com ("Red Dawn Party site").  Doc. 28 at ¶¶ 6-9.
20 Consumers may use these websites to purchase Evol's products.  *Id.*  Evol's sales through
21 its websites account for less than 3% of Evol's monthly sales.  *Id.* at ¶ 9.  On September 18,
22 2011, Evol sold two packages of its Zaney Bar product to a purchaser in Arizona through the
23 Red Dawn Party site.  *Id.* at ¶ 6.  In addition, through non-web-based sales, Evol has sold its

---

[1] In the Complaint, Revolution refers to its mark both as the "Zan E. Bar" mark and the "Zane E. Bar" mark.  It is unclear to the Court whether these different spellings are a result of a typographical error, in which case the Court cannot determine which is the proper spelling, or whether Revolution uses both spellings.  For the remainder of this Order, the Court will use the "Zan E. Bar" spelling to refer to Revolution's mark.

- 2 -

1  Zaney Bar product to three different stores in Arizona for a total amount of $640. *Id.* at ¶ 11.
2  Evol has continued to sell its Zaney Bar product to purchasers in Arizona since the filing of
3  this lawsuit. Doc. 32 at ¶ 11. Evol has also sold other products that are not at issue in this
4  case to Arizona, which have made up "the vast majority" of Evol's sales in Arizona. *Id.*
5  On October 10, 2011, Revolution received a cease and desist letter from a law firm
6  retained by Evol. Doc. 1-3, Ex. 6. The letter states the following:

> This letter is an express demand for [Revolution] to cease and desist from falsely infringing upon Evol's products and trademarks, including but not limited to "Zaney Bar." . . . [Revolution] has intentionally and willfully sought to capitalize on Evol's intellectual property. [Revolution's] use of "Zan E. Bar" is an intentional infringement upon Evol's "Zaney Bar" trademark.

10  *Id.* The letter further threatens the filing of a lawsuit against Revolution if it does not comply
11  with the demand. *Id.* There is no indication that Revolution responded to the letter.
12  However, shortly after receiving the letter, Revolution filed this lawsuit on October 27, 2011.
13  Defendants have filed motions to dismiss for lack of personal jurisdiction, or in the
14  alternative, to transfer venue. Evol's motion was filed on January 5, 2012 (Doc. 12). The
15  Nickels filed a joint motion on January 30, 2012 (Doc. 19). Revolution filed responses to
16  Evol's and the Nickels' motions (Docs. 26 & 29) on February 9, 2012 and March 5, 2012,
17  respectively, and Defendants filed replies (Docs. 27 & 30) on February 21, 2012 and March
18  15, 2012.[2] As discussed below, the Court concludes that it may properly exercise personal
19  jurisdiction over Evol, though not over the Nickels. However, the Court further holds that
20  transfer of venue to Georgia is appropriate.

---

[2] Defendants argue in their reply briefs that the Court should strike and disregard Revolution's responses as being untimely pursuant to Local Rule 7.2(c), which generally requires that responsive memoranda be filed within fourteen days after service of a motion. L.R. Civ. 7.2(c). However, Local Rule 7.2(c) makes an exception for motions filed under Local Rule 12.1. *Id.* That rule states that the "time schedule for response, reply, and oral argument for motions to dismiss for lack of jurisdiction shall be the same as for motions for summary judgment, as set forth in Rule 56.1, Local Rules of Civil Procedure. L.R. Civ. 12.1. Thus, in accordance with Local Rule 56.1(d), Revolution had thirty days to file its response, plus the additional three days added under Rule 6(d) for certain methods of service, including by electronic means. Fed. R. Civ. P. 6(d). The Court finds that Revolution's responses were timely filed, and therefore the Court will deny Evol's request to strike the responses.

## II.     PERSONAL JURISDICTION

The plaintiff bears the burden of establishing personal jurisdiction. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). A defendant may move prior to trial to dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2); *see*, *e.g.*, *Data Disc, Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1285 (9th Cir. 1977) (citing Rule 12(b)(2)). When a defendant does so, "the plaintiff is 'obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction'" over the defendant. *Cummings v. W. Trial Lawyers Ass'n*, 133 F. Supp. 2d 1144, 1151 (D. Ariz. 2001) (quoting *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986)). Conflicts over statements contained in the plaintiff's and defendant's affidavits "must be resolved in the plaintiff's favor." *Schwarzenegger*, 374 F.3d at 800 (citing *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)). If the Court decides a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Uncontroverted allegations in the Complaint are deemed true for purposes of resolving the motion. *Id*.

When, as here, no federal statute governs personal jurisdiction, the Court applies the law of the forum state. *Id*. The Arizona long-arm statute provides for personal jurisdiction to the extent permitted by the Due Process Clause of the United States Constitution. Ariz.R.Civ.P. 4.2(a); *see also A. Uberti & C. v. Leonardo*, 892 P.2d 1354, 1358 (Ariz. 1995) (stating that under Rule 4.2(a), "Arizona will exert personal jurisdiction over a nonresident litigant to the maximum extent allowed by the federal constitution").

Absent traditional bases for personal jurisdiction (i.e., physical presence, domicile, and consent), the Due Process Clause requires that a nonresident defendant have certain minimum contacts with the forum state such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997). The Due Process Clause protects a defendant's "liberty interest in not being

subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties or relations.'" *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 269-70 (9th Cir. 1995) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985)).

If the Court determines that Defendants' contacts with Arizona are sufficient to satisfy the Due Process Clause, then the Court must exercise either "general" or "specific" jurisdiction over Defendants. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-15 nn.8-9 (1984) (citations omitted). The nature of Defendants' contacts with Arizona will determine whether the Court exercises general or specific jurisdiction. *Id.* Here, Plaintiff does not contend that the Court has general jurisdiction over either Evol or the Nickels. Thus, the Court will only consider whether it has specific jurisdiction over Defendants.

### A.     **Evidence Considered by the Court**

In considering Defendants' motions to dismiss, the Court has considered the following evidence submitted by Revolution: 1) the Complaint; 2) Revolution's response to Evol's Motion; and 3) Revolution's response to the Nickels' motion. In addition, the Court has considered the following evidence submitted by Evol and the Nickels: 1) Evol's motion; 2) Evol's reply; 3) the Nickels' motion; 4) the Nickels' reply; 5) the four declarations submitted by Jeremy Nickels (Docs. 13, 20, 28 & 32); and 6) the declaration submitted by the Nickels' attorney (Doc. 31). The Court did not hold an evidentiary hearing; therefore Revolution must only make a prima facie showing of jurisdictional facts. *Boschetto*, 539 F.3d at 1015.

### B.     **Specific Jurisdiction over Evol**

The Court must determine whether Evol has established sufficient contacts with the forum state such that the exercise of specific jurisdiction over the company would not offend the Due Process Clause. *See Int'l Shoe*, 326 U.S. at 316. The Ninth Circuit applies a three-part test to determine whether a defendant's contacts with the forum state are sufficient to subject it to the state's specific jurisdiction. Under this three-part test, specific jurisdiction exists only if: (1) the defendant purposefully availed itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws, or

- 5 -

purposefully directed conduct at the forum that had effects in the forum; (2) the claim arises out of the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice, i.e., it is reasonable. *See Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 417 (9th Cir. 1997)). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger*, 374 F.3d at 802. "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* (internal quotations omitted).

### 1. "Purposeful Availment"

The first prong may be satisfied by either showing that the defendant "purposefully availed himself of the privilege of conducting activities in the forum" or "purposefully directed his activities toward the forum." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (internal quotations omitted). Though these two concepts both fall under the umbrella of "purposeful availment," the Ninth Circuit has clarified that "availment and direction are, in fact, two distinct concepts." *Id.* "A purposeful availment analysis is most often used in suits sounding in contract. . . . A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Schwarzenegger*, 374 F.3d at 802 (internal citations omitted). Here, the underlying cause of action is trademark infringement, which is akin to a tort case. *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998). Thus, the Court will apply the purposeful direction analysis.

The three-part *Calder* effects test, taken from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984), is used to evaluate purposeful direction. Under this test, "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006).

*a. Intentional Act*

To satisfy the first requirement of the effects test, it is enough that a defendant performed "an actual, physical act in the real world." *Schwarzenegger*, 374 F.3d at 806. The defendant need not have intended "to accomplish a result or consequence of that act." *Id.* Here, Evol's actions in maintaining its websites and selling and shipping its allegedly infringing products to purchasers in Arizona constitute intentional acts. Thus, the first prong of the effects test is satisfied.

*b. Express Aiming*

"The second part of the *Calder*-effects test requires that the defendant's conduct be expressly aimed at the forum." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010). Here, Evol's intentional conduct included selling and distributing allegedly infringing products to purchasers in Arizona, including sales to three stores in the state and one sale to a purchaser that was completed through Evol's Red Dawn Party website.

The determination of whether Evol's activities undertaken through its website were expressly aimed at Arizona is assessed under the *Cybersell* framework.[3] *See Adobe Sys. Inc. v. Childers*, No. 5:10-cv-03571-JF/HRL, 2011 WL 566812, *4 (N.D. Cal. Feb. 14, 2011). In *Cybersell*, the Ninth Circuit held that the operation of a passive website is not sufficient to establish purposeful availment. *Cybersell*, 130 F.3d at 419-20. Conversely, operation of an interactive website, which is one that allows users to "exchange information with the host

---

[3] Other Courts have applied the *Cybersell* framework in the context of a "purposeful availment" analysis, rather than a "purposeful direction" analysis. *See First Serv. Networks, Inc. v. First Serv. Maint. Grp., Inc.*, No. CV 11-1897-PHX-DGC, 2012 WL 1413369, at *2 n.3 (D. Ariz. April 24, 2012); *Adidas Am., Inc. v. Bobosky*, No. CV 10-603-PK, 2010 WL 4365795, at *5 (D. Or. Oct. 8, 2010). Furthermore, at least one court has noted that Ninth Circuit courts have used both "purposeful direction" and "purposeful availment" analyses in trademark infringement actions. *Adidas Am.*, 2010 WL 4365795, at *4. Hence, regardless of whether the Court's analysis under *Cybersell* more properly falls under "purposeful availment" or "purposeful direction," the Court finds that the first prong of the test for specific jurisdiction over Evol has been met.

- 7 -

computer" often is sufficient for exercising personal jurisdiction over the defendant operator. *Id.* at 418. Furthermore, the *Cybersell* decision as been interpreted to suggest that an interactive website that results in actual business transactions conducted with the forum state will meet the requirement for purposeful availment:

> In [*Cybersell*], the Ninth Circuit held that posting an advertisement on a passive Internet site is insufficient to create purposeful availment. . . . However, the *Cybersell* court also indicated that an interactive web site which allowed defendant to transact business over the Internet would constitute purposeful availment. . . . It further suggested that any transaction of business with the forum's residents, whether through the Internet or otherwise, would constitute purposeful availment.

*Park Inns Int'l, Inc. v. Pac. Plaza Hotels, Inc.*, 5 F. Supp. 2d 762, 763 (D. Ariz. 1998) (internal citations omitted).

Here, Evol admits that it operates "an interactive website to enable commercial activity." Doc. 27 at 3. More importantly, Evol has admitted that it sold its allegedly infringing Zaney Bar product to an Arizona purchaser through the Red Dawn Party website, Doc. 28 at ¶ 6, thereby using the interactive website to conduct business with the forum of Arizona. Apart from its web-based sale, Evol has admitted that it has sold and distributed its Zaney Bar product to three different stores in Arizona and continues to make such sales in Arizona. The Court finds that Evol's interactive websites, along with its product sales to Arizona purchasers, are sufficient to show that Evol expressly aimed its conduct at Arizona.

### *c.     Harm Caused in Forum State*

The third prong of the effects test requires that the defendant's conduct causes harm that the defendant knows is likely to be suffered by the plaintiff in the forum state. *See Yahoo!*, 433 F.3d at 1206. With regard to the amount of harm suffered, the Ninth Circuit has stated that the "brunt" of the harm to the plaintiff need not be suffered in the forum state. *Id.* at 1207. Rather, "[i]f a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state." *Id.*

Here, the alleged harm to Revolution is the infringement of its trademark. Thus, Evol's conduct, which includes selling allegedly infringing products directly to purchasers in Arizona, caused the alleged harm to Revolution in Arizona. Furthermore, the cease and

desist letter that Evol sent to Revolution provides prima facie evidence that Evol knew that Revolution was located in Arizona and using a similar trademark. Thus, the Court finds that the three prongs of the *Calder* effects test have been satisfied.

### 2.  **Claim Arises Out of Forum-Related Activities**

With regard to the second prong of the test for specific personal jurisdiction, the Ninth Circuit has adopted a "but for" test for determining whether a plaintiff's cause of action arises out of the defendant's forum-related activities. *Doe*, 112 F.3d at 1051. The "arising out of" requirement is met if, but for the contacts between the defendant and the forum state, the cause of action would not have arisen. *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995).

The "but for" test is satisfied in this matter because the cause of action arises out of Evol's forum-related activities. But for Evol's infringing use of Revolution's trademark, including on products sold to purchasers in Arizona, Revolution's trademark infringement action against Evol would not have arisen. The Court therefore finds that the alleged trademark infringement arises out of Evol's Arizona-related activities.

### 3.  **Reasonableness**

An unreasonable exercise of jurisdiction violates the Due Process Clause even if the "purposeful availment" and "arising out of" requirements of the specific jurisdiction test are satisfied. *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 474-75 (9th Cir. 1995). But the Court presumes that its exercise of jurisdiction over a defendant is reasonable if the first two requirements of the specific jurisdiction test are met. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). Once a plaintiff satisfies the first two requirements for specific jurisdiction, the burden of proof then shifts to the defendant, which must come forward with a "compelling case" that personal jurisdiction would be unreasonable. *Id*.

The Ninth Circuit considers the following seven factors in determining whether the exercise of specific jurisdiction over a defendant is reasonable: (1) the extent of the defendant's purposeful interjection into the forum state; (2) the burden on the defendant of litigating in the forum; (3) the extent of conflict with the sovereignty of the defendant's state;

(4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the dispute; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *See Ziegler*, 64 F.3d at 475.

Because the Court has found that Revolution has met the first two requirements of specific jurisdiction, Evol must come forward with a compelling case to rebut the presumption that jurisdiction in Arizona is reasonable. Evol has failed to meet its burden. Further, because Evol has not directly addressed the reasonableness requirement in its briefing, the Court will only briefly address the relevant factors.

Based on its sales of products to purchasers in Arizona, the Court finds that Evol has purposefully interjected itself into Arizona to conduct business. Further, though it is arguably more inconvenient for Evol to litigate this case in Arizona than in its home state of Georgia, the Court finds that there would only be a marginal increase in inconvenience. Thus, litigating in Arizona is likely just as inconvenient to Evol as litigating in Georgia would be to Revolution. There is also no apparent conflict with the sovereignty of Georgia, and Arizona clearly has an interest in adjudicating a dispute involving alleged infringement of one of its resident's trademarks. Evol has put forth no evidence that resolution of this dispute will be less efficient in Arizona. Finally, though Georgia presents an alternative forum, there is no indication, with regard to the question of whether exercising personal jurisdiction over Evol is appropriate, that litigating the case there would be more reasonable.

After a review of all the factors, the Court finds Evol has failed to present a compelling case that the exercise of jurisdiction would not comport with fair play and substantial justice. Because Revolution has satisfied the three-prong specific jurisdiction test, the Court finds that it may exercise personal jurisdiction over Evol. The Court therefore denies Evol's motion to dismiss for lack of personal jurisdiction.

**C.   Specific Jurisdiction over Jeremy and Jessica Nickels**

Jeremy and Jessica Nickels' alleged contacts with Arizona resulted from their activities as officers of Evol. Thus, the Court must apply the "fiduciary shield" doctrine to

determine whether exercising jurisdiction over the Nickels is proper. "Under the fiduciary shield doctrine, a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person." *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989). Instead, some other reason for the court to disregard the corporate form must exist. *Id.* "Because the corporate form serves as a shield for the individuals involved for purposes of liability as well as jurisdiction, many courts search for reasons to 'pierce the corporate veil' in jurisdictional contexts parallel to those used in liability contexts. Thus, the corporate form may be ignored in cases in which the corporation is the agent or alter ego of the individual defendant . . . or where there is an identity of interests between the corporation and the individuals." *Id.* at 520-21 (internal citations omitted). Further, the party seeking to invoke jurisdiction has the burden of proving that the court should pierce the corporate veil and exercise jurisdiction. *See Flynt Dist. Co., Inc. v. Harvey*, 734 F.2d 1389, 1393-94 (9th Cir. 1984).

The *Davis* decision also questions the continuing viability of the fiduciary duty doctrine as a defense to personal jurisdiction under Arizona's long-arm statute. Specifically, the court noted that, in *Calder*, "the Supreme Court appears to have signalled that the question whether there exists a jurisdictional corporate shield is not . . ." an issue "of constitutional dimensions." *Davis*, 885 F.2d at 521. Rather, the *Davis* court found that, in both *Calder* and *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984), the Supreme Court appeared to reject the notion that an individual's status as an employee could prevent the exercise of personal jurisdiction over that individual. *Id.* The *Davis* court also observed that "although Arizona courts previously recognized a corporate shield limit on their long-arm jurisdiction, . . . Arizona has more recently focused on corporate officers' individual contacts to assert personal jurisdiction, rather than restricting their jurisdiction to cover the corporate entity only." *Id.* (citation omitted). The Ninth Circuit further reasoned that "because the Arizona long-arm statute extends to the limit of constitutional due process . . . and because it is not equitably limited by the fiduciary shield doctrine, the reach of long-arm jurisdiction in Arizona is effectively stretched by the reasoning of *Calder* and *Keeton*." *Id.* at 522.

Hence, "Arizona's long-arm statute may, consistent with constitutional due process, allow assertion of personal jurisdiction over officers of a corporation as long as the court finds those officers to have sufficient minimum contacts with Arizona." *Id.* Because the parties argue based on the fiduciary shield doctrine, the Court will consider whether jurisdiction over the Nickels is proper under both that doctrine and the minimum contacts doctrine.

Here, Revolution's Complaint does not include any facts or allegations that would support piercing the corporate veil with respect to the Nickels. Revolution also has not submitted any declarations or affidavits alleging facts that would provide a prima facie showing of jurisdiction. Rather, most of Revolution's response to the Nickels' motion to dismiss makes almost identical arguments to those found in its response to Evol's motion to dismiss. The Court finds that those arguments, which simply assume that the Nickels are responsible for all of Evol's activities, do nothing to establish that jurisdiction over the Nickels is proper.

In the little space that Revolution uses to address the fiduciary duty doctrine, Revolution only alleges that the Nickels 1) developed and selected the "Zaney Bar" trademark; 2) applied for a trademark application for the "Zaney Bar" trademark as individuals; 3) own and operate Evol's websites; and 4) caused a cease and desist letter to be sent to Revolution. Doc. 29 at 9-10. Of these allegations, only the first and second have any factual support. Defendants have offered evidence that the Evol Nutrition website is registered to Evol, not to the Nickels. Doc. 31, Ex. A. Neither party has provided any factual support for the ownership of the Red Dawn Party website. Finally, the cease and desist letter was sent on behalf of Evol, refers to "Evol's products and trademarks," and makes no mention of either Jeremy or Jessica Nickels. Doc. 1, Ex. 6. The Court finds that the allegations, even if all true, merely reflect actions that the Nickels undertook in their capacity as employees of Evol and do not establish an alter ego relationship or an identity of interests between the Nickels and Evol. Revolution has therefore provided no basis for this court to pierce the corporate veil with respect to the Nickels.

The alleged acts also do not establish that minimum contacts existed between the

Nickels and Arizona. Moreover, Revolution makes no allegations of any other contacts that exist between the Nickels and Arizona that might satisfy the minimum contacts requirement. However, in one of Jeremy Nickels's declarations, he makes clear that neither he nor his wife have any contacts with Arizona. They do not pay nor owe taxes to Arizona, are not licensed by Arizona, and have never even traveled to Arizona in either an individual or business capacity. Doc. 20 at ¶¶ 7-9. Therefore, the Court finds that Revolution has failed to show that Jeremy and Jessica Nickels have satisfied the minimum contacts requirement in their personal capacities. Nor has Revolution demonstrated how jurisdictional discovery would allow it to contradict Jeremy Nickels's declaration or otherwise establish that the Nickels are subject to this Court's jurisdiction. *See Terracom*, 49 F.3d at 562 ("Where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery.") (quoting *Rich v. KIS Cal., Inc.*, 121 F.R.D. 254, 259 (M.D.N.C. 1988)). Thus, the Court cannot exercise personal jurisdiction over the Nickels. However, for the reasons discussed below with respect to transfer of venue, the Court will deny as moot the Nickels' motion to dismiss for lack of personal jurisdiction.

**III.    PROPER VENUE**

Defendants have also challenged Revolutions' choice of venue under 28 U.S.C. 1391(a) and (c). However, section 1391(a) applies only to cases "wherein jurisdiction is founded only on diversity of citizenship." Because this case involves federal trademark claims under the Lanham Act, jurisdiction is not based solely on diversity and thus section 1391(a) does not apply. Further, the Lanham Act does not contain its own venue provision, s*ee Woodke v. Dahm*, 70 F.3d 983, 983 (8th Cir. 1995), so one of the other general venue provisions must apply. Indeed, 28 U.S.C. § 1391(b)(2) applies and provides an appropriate basis for venue in this district.

Under § 1391(b)(2), venue in a "civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in . . . a judicial district in which a substantial part of the events or omissions giving rise to the

claim occurred." In a trademark suit brought under the Lanham Act, "a 'substantial part' of the events giving rise to the claims occur in any district where consumers are likely to be confused by the accused goods, 'whether that occurs solely in one district or in many.'" *Golden Scorpio Corp. v. Steel Horse Bar & Grill*, 596 F. Supp. 2d 1282, 1286 (D. Ariz. 2009) (quoting *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 295 (3d Cir. 1994)).

Here, Revolution has not alleged sufficient facts in the Complaint to establish that venue is appropriate in Arizona. In fact, Revolution does not address venue in the Complaint at all. Nevertheless, as described above, the declarations of Jeremy Nickels establish that Evol has sold allegedly infringing products to purchasers in Arizona through both web- and non-web-based sales. This evidence is sufficient to establish that consumer confusion caused by the accused goods is likely to occur in Arizona. Therefore, venue is appropriate in this district under § 1391(b)(2).

## IV.   TRANSFER OF VENUE

Finally, Defendants also request, in the alternative to dismissal, that the Court transfer this case to the Northern District of Georgia, Atlanta Division. Under 28 U.S.C. § 1404(a), a district court may, "for the convenience of the parties and witnesses, in the interest of justice, . . . transfer any civil action to any other district or division where it might have been brought." A court may consider several factors when deciding whether to transfer venue, including the plaintiff's choice of forum, the extent of the parties' contacts with the forum, the contacts in the forum relating to the plaintiff's cause of action, the availability of non-party witnesses, and the accessibility of evidence. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).

A district court has "discretion to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Id.* at 498 (internal quotation omitted). Also, a court need not have personal jurisdiction over a defendant in order to transfer a case under § 1404(a). *See Kawamoto v. CB Richard Ellis, Inc.*, 225 F. Supp. 2d 1209, 1211-12 (D. Haw. 2002).

With regard to convenience of the parties, the plaintiff's choice of forum is usually

- 14 -

given "substantial deference" where the plaintiff has chosen its home forum. *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d. 48, 52 (D.D.C. 2000). However, the plaintiff's choice of its home forum is only one factor to be considered and is not dispositive. *Impra Inc. v. Quinton Instruments Co.*, 17 U.S.P.Q.2d 1890, 1891, 1990 WL 284713, at *1 (D. Ariz. 1990). But "[t]he interest of justice factor is the most important of all." *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1261 (W.D. Wash. 2005) (internal citations omitted). "Consideration of the interest of justice, which includes judicial economy, 'may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result.'" *Id.* (quoting *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997)). Factors to be considered in the interest of justice analysis include "ensuring speedy trials, trying related litigation together, and having a judge who is familiar with the applicable law try the case." *Id.* (quoting *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989)).

Here, the only reason that Defendants offer in support of transferring the case to Georgia is that all Defendants reside and are located in that state. Plaintiff also does not provide specific reasons as to why venue is more appropriate in Arizona, other than to assert that venue is proper in this district. Neither party mentions the locations of likely witnesses or evidence. Thus, this Court cannot determine with any certainty which of the proposed venues is likely more convenient. In light of the deference that is given to Revolution's choice of its home venue, the Court concludes that considerations of convenience favor Arizona.

Nevertheless, the Court finds that in the interest of justice, transferring the case to Georgia is appropriate. As discussed above, the Court has personal jurisdiction over Evol, but it does not have personal jurisdiction over the Nickels. However, though it is Evol that appears to be responsible for the sales of the allegedly infringing goods in Arizona, the Nickels are the registered owners of the "Zaney Bar" trademark. Doc. 29-1, Ex. D. Trademark owners have been held by other courts to be indispensable parties to infringement

actions under Rule 19 of the Federal Rules of Civil Procedure.[4]  *See, e.g.*, *Int'l Importers, Inc. v. Int'l Spirits & Wines*, LLC, No. 10-61856-CIV, 2011 WL 7807548, at *8 (S.D. Fla. July 26, 2011) (collecting cases); *Jaguar Cars Ltd. v. Manufactures Des Montres Jaguar, S.A.*, 196 F.R.D. 306, 308-10 (E.D. Mich. 2000). Doing so protects the trademark holder's rights and interests, avoids multiple suits concerning the same basic facts, and also "protects the public interest in efficiently utilizing judicial resources." *May Apparel Grp., Inc. v. Ava Import-Export, Inc.*, 902 F. Supp. 93, 96 (M.D.N.C. 1995). Thus, when trademark owners cannot feasibly be joined to an infringement action for lack of personal jurisdiction, courts have dismissed the claims to which the owner is indispensible under Rule 19. *See, e.g.*, *Jaguar Cars*, 196 F.R.D. at 310.

A similar situation would arise here if the Court were to dismiss only the Nickels from the case based on lack of personal jurisdiction. However, because neither party has addressed the possibility of whether the Nickels are indispensable parties in its briefing, the Court is not prepared to determine whether dismissal of Revolution's claims is appropriate.[5] Nor does the Court see a need to order further briefing on this issue. Rather, in the interest of justice, the Court will transfer this case under § 1404(a) to the Norther District of Georgia, Atlanta Division, where Defendants have admitted they are subject to personal jurisdiction and venue is appropriate. The Court finds that this is the most appropriate course of action in light of the lack of personal jurisdiction over the Nickels and the very minimal amount of

---

[4] Rule 19 governs the required joinder of parties. The Ninth Circuit utilizes a three-part analysis to determine 1) whether a nonparty should be joined; 2) whether it is feasible to order that the nonparty be joined; and 3) if joinder is not feasible, whether the case can proceed in the nonparty's absence or should be dismissed. *EEOC v. Peabody W. Coal Co.*, 610 F.3d 1070, 1078 (9th Cir. 2010). Though the Rule previously referred to "necessary" and "indispensable" parties, it now refers to "persons required to be joined if feasible" and persons in whose absence, if they cannot be joined, the action should not proceed. *Id.* at 1078 n.1. However, these amendments were merely stylistic. *Id.*

[5] Thus, the Court is not basing its decision to transfer on a determination that the Nickels are indispensable parties under Rule 19; rather, the Court bases its decision on the various considerations, outlined above, for making such a determination, which, in the Court's view, counsel for transferring the case in the interest of justice.

- 16 -

contacts on which the Court can exercise jurisdiction over Evol. Further, transferring the case will ensure fair treatment to both parties—none of Revolution's claims nor the parties against which they are asserted will be dismissed, and all Defendants will have the opportunity to protect their rights and interests with respect to this litigation. Finally, transfer will ensure that this litigation, with respect to all involved parties and claims, proceeds in the most expeditious and efficient manner possible, thereby promoting the public policy interest in judicial economy.

## V. CONCLUSION

Accordingly,

**IT IS ORDERED** denying in part and granting in part Evol's and Jeremy and Jessica Nickels' motions to dismiss for lack of personal jurisdiction, or in the alternative, to transfer venue (Docs. 12 & 19). To the extent the motions seek dismissal for lack of personal jurisdiction, they are DENIED. To the extent the motions seek transfer of venue to the Norther District of Georgia, they are GRANTED. The Clerk of the Court shall transfer this action to the Northern District of Georgia, Atlanta Division.

DATED this 21st day of June, 2012.

James A. Teilborg
United States District Judge